**WO**                                                                                      LMH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rex Jeffrey Walls, | No. CV 05-2259-PHX-NVW (JCG) |
| Plaintiff, | **ORDER** |
| vs. | [Not for Publication] |
| Dora Schriro, et al., | |
| Defendants. | |

In this civil rights action brought by a state prisoner, Plaintiff seeks a preliminary injunction (dkt. #9) to require prison officials to design a meal plan that meets the requirements of his faith. Defendants[1] have responded (dkt. #56), and Plaintiff has replied (dkt. #73). After careful review of these pleadings and the record, the Court will deny Plaintiff's request for injunctive relief.

**1.    Plaintiff's Contentions**

Plaintiff observes the Hare Krishna faith. He is provided a lacto-vegetarian diet that excludes animal and egg products, but allows other types of dairy products. See Wilber Affidavit, ¶ 3, dkt. #70; Smith Affidavit, ¶ 7, dkt. #71. Plaintiff has not clearly explained why the lacto-vegetarian diet violates his religious beliefs. From his various pleadings, it

---

[1] Defendants Schriro, Becker, Beingski, Henderson, Kimble, Mason, Sauceda, Curran, and Powers have responded. Defendants Wilber and L. Smith have not  They presently have a motion to dismiss/summary judgment pending that addresses Plaintiff's request for injunctive relief in his prayer for relief in the First Amended Complaint. See Dkt. #69 at pp. 12-14.

appears that he wants his food to be prepared by a Krishna devotee and that he does not want his meals to contain garlic, onions, and caffeinated beverages, which are forbidden by his faith.

Specifically, in Count I of his verified First Amended Complaint (dkt. #7), Plaintiff alleges that he was served a lacto-vegetarian diet designed for Sikhs. In his motion for preliminary injunction (Mot., dkt. #9), Plaintiff further asserts that at the South Unit, they do not have the "pot or pan or the food to feed me a true lacto-vegetarian diet." (Mot. at 4.) He admits that the food service has many items that he may eat, listing more than 10 of them. Id. at 4-5. Plaintiff also asserts in his motion that his cholesterol levels are so high that he must take medication. Id. at 3. This assertion is apparently an attempt to support his claim that he is not being served the proper diet for his religious beliefs. Finally, in his Declaration in Support of his Motion, Plaintiff states that he would like to "receive a Hare Krishna/Hindu *Kosher* veggie diet that will keep me in good health and satisfy the laws of Krishna." (Declaration at 1, emphasis added.) Plaintiff has not explained how the lacto-vegetarian diet violates his beliefs, nor has he explained how the *Kosher* diet would satisfy his beliefs.

Then, in his reply to Defendants' response, Plaintiff asserts that he cannot have onion and garlic, which are contained in "95% of their food." (Reply, dkt. #73, at 2.) He also asserts that caffeinated beverages are off limit. In support, Plaintiff refers to the Book of Bhakti, which states:

> In the *Bhagavad-gita*, Lord Krsna states, "If one offers Me with love and devotion a leaf, a flower, a fruit, or water, I will accept it." From this verse it is understood that we can offer Krsna foods prepared from milk products, vegetables, fruits, nuts and grains . . . . Meat, fish, and eggs are not offerable. And a few vegetarian items are also forbidden – garlic and onions, for example, which are in the mode of darkness. . . . Nor can you offer to Krsna coffee or tea that contains caffeine.
>
> \* \* \* \*
>
> Also avoid foods cooked by nondevotees. According to the subtle laws of nature, the cook acts upon the food not only physically but mentally as well. Food thus becomes an agent for subtle influences on your conscious . . . So if you eat food cooked by nondevotees–employees working in a factory for example–then you're sure to absorb a dose of materialism and karma. So as far as possible use only fresh, natural ingredients.

- 2 -

1  (Book of Bhakti, dkt. #66, Ex. D, at pp. 40-41). Plaintiff again asserts that a lacto-vegetarian
2  diet that is also Kosher would meet his religious dietary requirements, but he does not
3  explain how. For relief, he asks that prison officials be required to meet with him to develop
4  a diet.[2]

5  **2.     Defendants' Response**

6  Defendants respond that: (1) Plaintiff has failed to show irreparable injury to the
7  practice of his religion, in part because his diet meets his religion's requirements; (2) the
8  balance of hardships is not in Plaintiff's favor because there will be a "ripple effect" if the
9  prison is required to accommodate one inmate with a special diet; (3) Plaintiff cannot show
10 a likelihood of success on the merits because his diet conforms to his religious requirements;
11 and (4) Plaintiff has not shown how the public interest would be served by providing him
12 with an individually tailored diet.

13 To support their contentions, Defendants submit the affidavit of Michael Linderman,
14 the Administrator of Pastoral Activities for the Arizona Department of Corrections.
15 (Linderman Aff., Resp. Attach. A). Linderman holds a B.A in religious studies from
16 Missouri Southwest Baptist University and a M.A. in divinity from Midwestern Baptist
17 Theological Seminary. He was a pastor for 6 years, and he has worked with the ADC for 16
18 years in the area of religion. Id., ¶ 3.

19 According to Linderman, a lacto-vegetarian diet satisfies the religious requirements
20 of a Krishna observer. (Linderman Aff., ¶ 6.) Linderman refers to an "All Purpose
21 Declaration" by Mother Shyama Priya, the Regional Secretary of The International Society
22 for Krishna Consciousness, Prison Ministry. In 2003, Plaintiff attached Mother Priya's
23 Declaration to a grievance that he filed. The Declaration states:

> A complete "lacto-vegetarian" diet must be followed. The diet should consist
> mostly of fresh raw vegetables and fresh fruit, and cooked vegetable dishes
> with herbs and spices added such as cumin, coriander, tumeric, mustard, curry
> powder, etc. All types of beans and grains, such as rice, corn wheat, etc. are
> allowed. Milk products are allowed such as rennet-less cheese, cottage cheese,

---

28  [2]Plaintiff also seeks relief regarding the possession of religious items; however, this claim was dismissed for lack of exhaustion. See Order (dkt. #42).

- 3 -

>yogurt, without gelatin, milk and butter. No meat, fish or eggs, or egg products, or derivatives of meat of fish are allowed to be eaten at all, nor any meat products - such as cheese which uses rennet, taken from slaughtered animals, no soup with pork added, etc. This is an extremely important religious principle, and must be followed strictly by the devotee, as "ahimsa," non-harming of any innocent living being is a foremost practice.

(Linderman Aff., ¶ 8, Ex. 2.)

In Linderman's opinion, Plaintiff has not established that his religion requires a *Kosher* diet. Id., ¶ 11. Linderman states that Muslim inmates often request Kosher diets, which for the nearly 1,000 of them, would cost an additional 2 to 3 millions dollars annually. Id., ¶ 11. Similarly, the cost for tailoring diets for the 60 religions practiced by 33,000 inmates would be astronomical. Id., ¶ 12.

**3.    Legal Standards**

   *a. Injunctive relief*

A preliminary injunction is an extraordinary and drastic remedy and will not be granted absent a clear showing of likely success in the underlying claim and possible irreparable injury. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (*per curiam*); Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th Cir. 2005); Pratt v. Rowland, 65 F.3d 802, 805 (9th Cir. 1995). Alternately, a party may show that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor. Warsoldier, 418 F.3d at 994.

   *b. First Amendment*

Prisoners retain the First Amendment right directing that no law shall prohibit the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Henderson v. Terhune, 379 F.3d 709, 712 (9th Cir. 2004). To state a claim, Plaintiff must allege that Defendants burdened the practice of his religion without any justification reasonably related to legitimate penological interests. Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997). Whether a regulation is reasonably related to legitimate penological interests requires an analysis of four prongs: (1) there must be a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact accommodation of the right

- 4 -

1 will have on guards and other inmates, and on the allocation of prison resources; and (4) the
2 absence of ready alternatives. Turner v. Safley, 482 U.S. 78, 90 (1987); Henderson, 379 F.3d
3 at 713.

      *3. Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")*

5       Under RLUIPA, a government may not impose a substantial burden on the religious
6 exercise of a confined person unless the government establishes that the burden furthers a
7 "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C.
8 § 2000cc-1(a)(1)-(2). This "compelling government interest" and "least restrictive means"
9 test replaced Turner's "legitimate penological interest" test. Warsoldier, 418 F.3d at 994
10 (citing 42 U.S.C. § 2000cc-1(a)). Under its own terms, RLUIPA must be "construed broadly
11 in favor of protecting an inmate's right to exercise his religious beliefs." Id. at 995 (citing
12 42 U.S.C. § 2000cc-3(g)). Last year, the Supreme Court upheld the constitutionality of
13 RLUIPA against an Establishment Clause challenge. Cutter v. Wilkinson, 125 S. Ct. 2113
14 (2005).

15       The inmate bears both the burden of establishing a prima facie case and the burden
16 of persuasion on whether there is a "substantial burden" on the inmate's exercise of religious
17 beliefs. Warsoldier, 418 F.3d at 994 (citing 42 U.S.C. § 2000cc-2(b)). A burden is
18 substantial when it imposes a significantly great restriction or onus upon religious exercise.
19 Id. at 995 (quotations omitted). If the inmate meets his burden of proof, the government
20 bears the burden of persuasion to prove that the substantial burden on the exercise of
21 religious beliefs is both in furtherance of a compelling governmental interest and the least
22 restrictive means of furthering that compelling governmental interest. Warsoldier, 418 F.3d
23 at 995 (citing 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)).

24 **4.    Analysis**

25     *a. RLUIPA*

26       Because the standards under RLUIPA are more favorable to Plaintiff, the Court will
27 begin its analysis under that Act. In the context of a motion seeking a preliminary injunction,
28 Plaintiff must make a clear showing of a likelihood of success on his claim and the

- 5 -

1 possibility of irreparable injury. Based on his submission, Plaintiff's dissatisfaction with the
2 lacto-vegetarian diet is (1) the lack of preparation by a Krishna devotee, and (2) the inclusion
3 of forbidden garlic, onions, and caffeinated beverages.

### 1. Preparation by a devotee

As stated above, Plaintiff bears of the burden of establishing that a government practice is a substantial burden on the exercise of religious beliefs. See Warsoldier, 418 F.3d at 994 (citing 42 U.S.C. § 2000cc-2(b)). The requirement that meals be prepared by a Krishna devotee is not absolute. Plaintiff's own evidence of the Book of Bhakti indicates that such meals prepared by nondevotees should be *avoided*, but are not absolutely forbidden. See Book of Bhakti, dkt. #66, Ex. D, at p. 41. The letter from Mother Priya also does not indicate that food must be prepared by a Krishna devotee. Consequently, the lack of a devotee to prepare Plaintiff's food does not substantially burden his religious exercise.

Even if Plaintiff could show a substantial burden, Defendants have shown the existence of a compelling state interest in the prohibitive cost of individually-tailored meals. The Supreme Court noted that lawmakers supporting RLUIPA anticipated that it would be applied with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." See Cutter, 125 S. Ct. at 2123 (citing Joint Statement S7775, quoting S. Rep. No. 103-11, p. 10 (1993), U.S. Code Cong. & Admin. News 1993, pp. 1892, 1899, 1900).

Defendants have demonstrated that the cost of preparing meals that are individually tailored for inmates would be an "astronomical." (Linderman Aff., ¶ 12.) Plaintiff has not submitted any evidence to show that there are numerous Krishna devotees in the ADC, nor has he submitted any evidence to show that a Krishna devotee works in the kitchen and could prepare his meals. Obviously, hiring an individual who is a Krishna devotee to prepare Plaintiff's meals would be costly and consume limited prison resources. The lacto-vegetarian diet is an appropriate way to meet the "least restrictive means" of furthering the prison's interest in using its limited resources and allowing Plaintiff to exercise his religious beliefs.

**2. Garlic, onions and caffeinated beverages**

The only reason that the lacto-vegetarian diet fails to satisfy Plaintiff's religious beliefs is that the diet often includes forbidden onions, garlic, and caffeinated beverages. This assertion, however, is made too late. Plaintiff first mentions it in his reply, and issues raised for the time in a reply brief are waived. See Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir. 2004) (*per curiam*). There is nothing in the record to indicate that Defendants ever knew that Plaintiff's beliefs forbade onion, garlic and caffeinated beverages. Mother Priya's declaration – which was provided to Defendants by Plaintiff – does not indicate that these items are forbidden. Further, as Defendants assert, Linderman's opinion is that the lacto-vegetarian diet meets Plaintiff's religious beliefs as set forth by Mother Priya.

In addition, Plaintiff's suggested remedy of combining a Kosher and lacto-vegetarian diet does not show how his religious beliefs would be met. Vegetables are Kosher, see Ashelman v. Wawrzaszek, 111 F.3d 674, 675 n. 2 (9th Cir. 1997), and Plaintiff has not demonstrated that a Kosher diet prohibits onions, garlic, and caffeine.

Finally, to the extent that Plaintiff may be claiming that his faith is substantially burdened by the inclusion of these items in either a lacto-vegetarian or Kosher diet, he is actually seeking a diet specifically tailored to his individual needs. As stated in the foregoing, Defendants have demonstrated a compelling state interest in the prohibitive cost and burden on prison resources of tailoring meals to meet individual needs. See Linderman Aff., ¶ 12. The evidence shows the lacto-vegetarian diet meets the majority of Plaintiff's religious dietary needs, and the Court is persuaded that it is the least restrictive means of allowing Plaintiff to exercise his religious beliefs.

*b. First Amendment*

In light of Plaintiff's inability to show a likelihood of success on a claim under RLUIPA, he also cannot satisfy the First Amendment standards. In other words, if the prohibitive cost of individually tailoring meals to meet Plaintiff's unique religious needs and the availability of the lacto-vegetarian diets satisfies the compelling interest and least

- 7 -

restrictive alternative tests of RLUIPA, the reasonably legitimate penological justification standard of the First Amendment is also met.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (dkt. #9) is **denied**.

DATED this 13th day of April 2006.

_____
Neil V. Wake
United States District Judge