JDN

**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Rex Jeffrey Walls, | ) | No. CV 05-2259-PHX-NVW (JCG) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Dora B. Schriro, et al., | ) | |
| Defendants. | ) | |

Plaintiff Rex Jeffrey Walls brought this civil rights action under 42 U.S.C. § 1983 against various officials from the Arizona Department of Corrections (ADC): ADC Director Schriro; Sr. Chaplains Henderson and Becker; Chaplains Mason and Powers; Deputy Warden Kimble; and Correctional Officers (CO) Curran, Beginski, and Sauceda (Doc. #7).[1] Defendants filed a Motion for Summary Judgment, which was fully briefed by the parties (Doc. ##158, 163, 165-166, 183). Plaintiff's response included a Motion for Dismissal of the summary judgment motion (Doc. #163).

The Court will grant Defendants' motion in part for the claim in Count III brought under the Religious Land Use and Incarcerated Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.,* and qualified immunity on the RLUIPA damages claims, and will otherwise deny the motion. Plaintiff's Motion for Dismissal Defendants' Motion for Summary Judgment is procedurally improper, as a motion for summary judgment cannot be "dismissed."

---

[1] Upon screening, the Court dismissed ten Defendants (Doc. #11). Two other Defendants—Wilber and Smith—were dismissed voluntarily and on summary judgment respectively (Doc. #97). And McVicker, Ireland, and Sabbah were dismissed for failure to serve (Doc. #100).

Plaintiff's Motion for Dismissal will be denied, but it will be treated as a response to the Motion for Summary Judgment. For the reasons set forth below, the denial of the parties' motions will be without prejudice, and a new dispositive motions deadline will be established.

## I.    Background

Plaintiff's action concerns his right of religious exercise as a member of the Hare Krishna faith. There is no dispute that Plaintiff is a sincere adherent to this religion. In Count I of his First Amended Complaint, Plaintiff alleged that he was denied a proper religious diet (Doc. #7 at 4). He asserted that his meals must be handled only by Hare Krishna devotees (id.). Count II alleged that Defendants denied Plaintiff a religious hairstyle in accordance with the Hare Krishna faith (id. at 5).[2]  The Court granted Plaintiff's subsequent request for a preliminary injunction permitting him to wear the religious hairstyle called a sikha—a shaved head except for a lock of hair at the base of the skull (Doc. #97).[3] And in Count III, Plaintiff claimed that Defendants denied him religious services and visitations (Doc. #7 at 6). Plaintiff alleged that Defendants' actions violated (1) his rights under the Free Exercise Clause of the First Amendment, (2) his right to equal protection under the Fourteenth Amendment, and (3) his rights under RLUIPA (see Doc. #11).

Defendants have moved for summary judgment on the grounds that (1) Plaintiff has failed to carry his burden to make a *prima facie* case for any of his claims under the RLUIPA standard and (2) Defendants are entitled to qualified immunity (Doc. #158). They argued that the lacto-vegetarian meal Plaintiff receives does not impose a significant burden on his religious exercise and, nonetheless, financial and administrative concerns prohibit the customized diet that Plaintiff requests. Defendants contended that enforcing the ADC grooming policy governing hairstyles is necessary to maintain uniformity and good order,

---

[2] The Court dismissed those claims in Count II that concerned the possession of certain religious items because Plaintiff failed to exhaust administrative remedies (Doc. #42). The claim within Count II regarding the religious hairstyle was reinstated by the Court (Doc. #97).

[3] This injunctive relief extends until the conclusion of this case or until the Court orders otherwise (Doc. #125).

1   to prevent quick inmate identification of group affiliation, and to protect Plaintiff from other

2   inmates who may target him because of his religious hairstyle.  And as to Count III,

3   Defendants argued that the ADC Chaplains made every effort to accommodate religious

4   visitors for Plaintiff but the visitors chose not to come to the prison (id.).  In support of their

5   motion, Defendants proffered the declarations of various ADC officials, including Henderson

6   (Doc. #159, Exs. A-C); excerpts from Plaintiff's deposition (id., Ex. D); copies of the ADC

7   diet policies (id., Exs. E-VERIFY); copies of Plaintiff's inmate letters (id., Exs. G-H); and

8   religious visitation documents (id., Exs. I-M).

9        Plaintiff responded with a Motion for Dismissal of Defendants' Motion for Summary

10   Judgment (Doc. #163).[4]  He maintained that his claims should not be dismissed for

11   nonexhaustion, which was not an argument raised by Defendants (id. at 2-4).  As to Count

12   II, he contended that Defendants already make exceptions to the ADC grooming policy for

13   other inmates and that his own Hare Krishna hairstyle does not fall within the "radical,

14   bizarre or exotic" hairstyles that are prohibited by the ADC policy (id. at 4-5).  He relied on

15   the Court's issuance of a preliminary injunction for his hairstyle to demonstrate that his faith

16   is substantially burdened by the grooming policy (id. at 8).  Plaintiff disputed the facts as

17   presented by Defendants concerning Count III (id. at 5-6).  He claimed that he does not seek

18   to dance and chant in his dorm setting; rather, he seeks to use office rooms, classrooms, or

19   visitation rooms when they are empty for his religious observances (id. at 8).  And he

20   suggested that the ADC allow him to conduct services, if necessary, by transferring other

21   Hare Krishna inmates to his unit (id. at 6, 9).  Plaintiff also indicated that Defendants'

22   counsel has failed to produce documents in discovery (id. at 4, 6).

23        In their reply, Defendants construed Plaintiff's clarification of claims as a request to

24   amend his pleading and argued that amendment would be improper (Doc. #165 at 1).  They

25

26

27        [4]The last sentence of Plaintiff response/motion includes a request that the Court "grant Plaintiff a summary judgment and order Defendant[s] to try and sett[le] with Plaintiff" (Doc. #163 at 10).  The motion does not comply with the requirements of LRCiv 56.1 for motions

28   for summary judgment.  To the extent that Plaintiff seeks summary judgment or an order compelling Defendants to try and settle, the motion is denied without prejudice.

1  also argued that Plaintiff failed to rebut Defendants' specific arguments or submit an affidavit

2  or separate statement of facts. (id. at 2). Lastly, they maintained that all discovery requests

3  have been promptly addressed (id. at 3).

4  Plaintiff then filed a sur-reply in which he argued (1) discovery requests have not been

5  honored by Defendants, (2) the laws of his religion require him to eat only properly prepared

6  Krishna food, and (3) the failure to provide him with a proper vegetarian diet is

7  unconstitutional (Doc. #166 at 1-3).  He conceded that it was difficult getting religious

8  people into the prison for services (id. at 3). But he insisted that this fact does not defeat his

9  claim in Count III. Plaintiff denied Defendants' assertions that there is a threat to his safety

10  posed by gang members because of his Hare Krishna hairstyle, and he again asserted that

11  Schriro has granted an exception to the grooming policy for another inmate (id. at 4).

12  Defendants filed another reply in support of their summary judgment motion;

13  however, this second reply memorandum was a duplicate of the one previously filed (Doc.

14  #176, compare with Doc. #165).

15  Because Plaintiff did not receive the notice required under Rand v. Rowland, 154 F.3d

16  952, 962 (9th Cir. 1998), prior to filing his response memorandum, the Court issued an Order

17  allowing Plaintiff additional time to submit documentary evidence to support his response

18  and sur-reply (Doc. #182).  Plaintiff then filed a "Motion to Submit Evidence" that included

19  affidavits and exhibits (Doc. #183).  The Court granted this motion and treated the filing as

20  Plaintiff's evidentiary response to the summary judgment motion (Doc. #184).  Plaintiff's

21  evidence included affidavits from two other prisoners (Doc. #183, Exs. 2, 4); affidavits from

22  two members of ISKCON Prison Ministry[5] (id., Exs. 1, 3); a copy of the inmate holiday

23  menu for the Fourth of July (id., Ex. 5); and some excerpted material about Hare Krishna

24  meals and principles (id., Exs. 6-7).

25  Defendants did not file a reply.

26

27

28  [5]ISKCON refers to the International Society for Krishna Consciousness (see Doc.
#183, Ex. C).

1    **II.    Legal Standard**

2        **A.    Summary Judgment**

3        A court must grant summary judgment "if the pleadings, depositions, answers to

4    interrogatories, and admissions on file, together with the affidavits, if any, show that there

5    is no genuine issue as to any material fact and that the moving party is entitled to judgment

6    as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317,

7    322-23 (1986).   Under summary judgment practice, the moving party bears the initial

8    responsibility of presenting the basis for its motion and identifying those portions of the

9    record, together with affidavits, that it believes demonstrate the absence of a genuine issue

10    of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th

11    Cir. 2001) (*en banc*).  If the moving party meets its burden with a properly supported motion,

12    the burden then shifts to the opposing party to present specific facts that show there is a

13    genuine issue for trial.  Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819

14    (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Conclusory

15    allegations, unsupported by factual material, are insufficient to defeat a motion for summary

16    judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposing party

17    must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show

18    there is a genuine issue for trial.  Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

19    The opposing party need not establish a material issue of fact conclusively in its favor; it is

20    sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

21    parties' differing versions of the truth at trial."  First Nat'l Bank of Arizona v. Cities Serv.

22    Co., 391 U.S. 253, 288-89 (1968).

23        In assessing whether a party has met its burden, the court views the evidence in the

24    light most favorable to the non-moving party.  Allen v. City of Los Angeles, 66 F.3d 1052,

25    1056 (9th Cir. 1995).  All reasonable inferences are drawn in favor of the nonmovant.

26    Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

27

28

1

### B.      First Amendment

2        The First Amendment provides in relevant part that the government shall not prohibit

3   the free exercise of religion.  U.S. Const. amend. I.  Free exercise rights, however, are

4   "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve

5   legitimate correctional goals or to maintain prison security."  McElyea v. Babbitt, 833 F.2d

6   196, 197 (9th Cir. 1987) (*per curiam*).  The First Amendment is implicated if a prisoner's

7   belief is "sincerely held" and "rooted in religious belief."  Malik v. Brown, 16 F.3d 330, 333

8   (9th Cir. 1994).   To show a violation under the First Amendment, a plaintiff must

9   demonstrate that a prison regulation that impinges on his religious exercise is not reasonably

10  related to a legitimate penological interest.  Id. at 333-34 (citing Turner v. Safley, 482 U.S.

11  78, 89 (1987)).

12

### C.      Religious Land Use and Institutionalized Persons Act

13       RLUIPA provides in relevant part that "[n]o government shall impose a substantial

14  burden on the religious exercise of a person residing in or confined to an institution . . . even

15  if the burden results from a rule of general applicability," unless the government establishes

16  that the burden furthers "a compelling governmental interest" and does so by the "least

17  restrictive means."  42 U.S.C. § 2000cc-1(a)(1)(2).  The Ninth Circuit has stated that a

18  substantial burden is one that is "'oppressive' to a 'significantly great' extent.  That is, a

19  'substantial burden' on 'religious exercise' must impose a significantly great restriction or

20  onus upon such exercise."  Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)

21  (citation omitted).  The burden need not concern a religious practice that is compelled by, or

22  central to, a system of religious belief.  42 U.S.C. § 2000cc-5(7)(A).  But the burden must

23  be more than an inconvenience; it must prevent the plaintiff "from engaging in [religious]

24  conduct or having a religious experience."  Navajo Nation v. United States Forest Service,

25  479 F.3d 1024, 1042 (9th Cir. 2007) (internal citations omitted).

26       Under RLUIPA, the plaintiff bears the initial burden of demonstrating a *prima facie*

27  claim that the challenged state action constitutes a "substantial burden" on his "religious

28  exercise."  Warsoldier, 418 F.3d at 994; see also Navajo Nation, 479 F.3d at 1033.  Once the

1    plaintiff establishes a substantial burden, the defendants must prove that the burden both

2    furthers a compelling governmental interest and is the least restrictive means of achieving

3    that interest.  Warsoldier, 418 F.3d at 995.  RLUIPA is to be construed broadly in favor of

4    the inmate.  See 42 U.S.C. § 2000cc-3(g).  At the same time, RLUIPA is to be applied with

5    due deference to prison officials and their need to maintain order and security.  Cutter v.

6    Wilkinson, 544 U.S. 709, 723 (2005).  Any accommodation "must be measured so that it

7    does not override other significant interests."  Id. at 722.

8         **D.    Fourteenth Amendment**

9         Plaintiff alleged in each of his counts that Defendants violated his rights under the

10   Equal Protection Clause of the Fourteenth Amendment; however, in their motion Defendants

11   made no mention of equal protection and presented no argument for summary judgment on

12   these claims.  As such, the Court need not set forth the legal standard applicable to equal

13   protection claims.  Plaintiff's equal protections claims within each count will survive

14   summary judgment.

15        Because the RLUIPA standard is more favorable to Plaintiff, the Court will begin its

16   analysis for each count under that Act.

17   **III.   Count I—Religious Diet**

18        **A.    RLUIPA Claim**

19        **1.    Parties' Contentions**

20        Defendants argue that Plaintiff has failed to come forth with evidence to support a

21   *prima facie* case that the ADC diet he receives constitutes a substantial burden on the

22   exercise of his religious beliefs (Doc. #158 at 8).  Defendants submit Plaintiff's deposition

23   testimony in which he states that a kosher vegetarian diet is required to accommodate his

24   religious beliefs (Doc. #159, Ex. D, Pl. Dep. 23:13-17, 30:2-11, Feb. 12, 2007).  According

25   to Michael D. Linderman, Administrator of Pastoral Activities at ADC, Plaintiff has received

26   a lacto-vegetarian diet since 1999 and only recently claimed that it was unacceptable because

27   he believed that it was the special diet for those of the Sikh faith (id., Ex. A, Linderman Decl.

28

1  ¶ 9). Despite Plaintiff's belief that the diet he receives is for Sikhs, Defendants contend that

2  the lacto-vegetarian diet satisfies Plaintiff's religion.

3         Plaintiff avers that his religious beliefs require that his meals be prepared by a devotee

4  of his faith, specifically in either Tucson or China (Doc. #159, Ex. D, Pl. Dep. 30:7-11, 17-

5  21).  He proffers the declaration of Mother Shyama Priya, from ISKCON Prison Ministry,

6  who describes the necessary diet for Hare Krishna followers as one that is vegetarian in

7  substance and where all foods are prepared by an authorized member of the Hare Krishna

8  religion (Doc. #183, Ex. C, Priya Decl. at 1).  Plaintiff also relies on an excerpt from "Krsna

9  Consciousness at Home" that advises Hare Krishna members to avoid foods that are cooked

10 by nondevotees because "the cook acts upon the food not only physically but mentally as

11 well" (id., Ex. 7 at 1).[6]

12        Plaintiff further argues that the lacto-vegetarian diet he receives is not a "true" lacto-

13 vegetarian diet for the Hare Krishna faith because it includes garlic, onions, eggs, and

14 caffeinated beverages, which should all be omitted from a Hare Krishna lacto-vegetarian diet

15 (id. at 1-2).  He points to Priya's declaration that states that eggs and their by-products,

16 onions, garlic, vinegar, and caffeine are all prohibited substances (id., Ex. C, Priya Decl. at

17 1).  Plaintiff submits the declaration of Daniel Romero, an ADC inmate who works as a cook

18 in the Meadow Unit kitchen (id., Ex. 4).  Romero states that the lacto-vegetarian diet Plaintiff

19 is served includes garlic, onions, eggs, and beverages with caffeine (id.).

20      **2.**    **Analysis**

21            *a.  Substantial Burden*

22        Plaintiff bears the initial burden of producing evidence to demonstrate a *prima*

23 *facie* claim that Defendants' refusal to provide him with a lacto-vegetarian diet that is

24 prepared according to the Hare Krishna dietary laws amounts to a substantial burden on his

25 religious exercise.  See 42 U.S.C. § 2000cc-2(b).

26

27

28       [6]Although Plaintiff failed to provide full documentation and citations for the excerpt
from "Krsna Consciousness at Home," Defendants make no objection to this evidence.

Plaintiff has demonstrated a sincere belief that eating food prepared by a member of his religion is consistent with his faith.  The evidence shows that although Plaintiff receives a lacto-vegetarian diet, the meals include food items that violate Plaintiff's religious dietary laws. Requiring Plaintiff to eat food that is prohibited by his religion's dietary regimen may constitute a substantial burden on his religious practice.  See Ward v. Walsh, 1 F.3d 873, 878 (9th Cir. 1993).  In light of Congress' intent for courts to construe RLUIPA broadly in favor of prisoners' rights to exercise their religious beliefs, and given Plaintiff's sincere belief that eating meals prepared by Hare Krishna devotees and excluding certain food items is a requirement of his faith, the Court finds that there is a substantial burden on Plaintiff's religious exercise.

### b.  Compelling Governmental Interest/Least Restrictive Means

The burden shifts to Defendants to show that the current provision of the lacto-vegetarian diet is the least restrictive means of furthering a compelling governmental interest. When applying this compelling governmental interest standard, "context matters." Cutter, 544 U.S. at 723.  Here, context includes consideration of (1) the available resources and (2) the regulations and procedures necessary to facilitate feeding large numbers of prisoners while maintaining security and discipline.  See id.

Defendants contend that compelling interests exist.  Plaintiff submits that to accommodate his religious tenants, he should be able to design his own meals and those meals must be prepared by devotees from a Hare Krishna temple in Tucson or China and picked up by ADC (Doc. #159, DSOF ¶¶ 17-18, Ex. G; Ex. D, Pl. Dep. 36:17-21, 40:3-13, 41:12-15).  Linderman states that accommodating Plaintiff's request would significantly upset institutional operations and present a financial difficulty (id., Ex. A, Linderman Decl. ¶¶ 10-12).  He avers that the cost of providing the customized diet would be grossly prohibitive (id. ¶ 10).  Linderman adds that Plaintiff's customized diet request would be virtually impossible to fulfill given the fixed resources of the ADC (id. ¶¶ 10).  He further states that such an accommodation would significantly affect institutional operations (id. ¶¶ 12-13).

1   As stated, religious accommodations should not override a prison's significant

2   interests in maintaining order and security consistent with the available resources. See

3   Cutter, 544 U.S. at 722.  The Supreme Court noted that if an inmate's request for an

4   accommodation is excessive or jeopardizes the effective functioning of the prison, the

5   accommodation need not be met. Id. at 726.  Arguably, Plaintiff's request that he receive

6   meals specially prepared by Hare Krishna devotees at Tucson or China temples may appear

7   to be excessive, but Defendants must demonstrate that it is, in fact, excessive.  See

8   Warsoldier, 418 F.3d at 1000 ("prison officials *must* set forth detailed evidence, tailored to

9   the situation, . . . that identifies the failings in the alternatives advanced by the prisoner"

10  (emphasis in original) (citation omitted)).  They must set forth specific facts showing that in

11  this case, providing Plaintiff with customized religious meals would actually result in the

12  adverse impact on prison operations or that the lacto-vegetarian diet provided to Plaintiff is

13  the least restrictive means of furthering a compelling interest.

14  Linderman's declarations of the potential consequences of the requested

15  accommodation are too general to make the requisite showing of a compelling interest.

16  Defendants fail to provide specific information on the costs and effects on the administration

17  of the prison.  For example, Linderman does not state *how* the requested accommodation

18  would upset institutional operations or *why* providing the customized diet would be virtually

19  impossible or to what extent the meals would be cost prohibitive.  Although the Court would

20  not expect an itemized statement detailing the exact dollar amount of procuring a customized

21  religious diet, Defendants' burden to prove the existence of a compelling interest—which is

22  not insurmountable—requires more than Linderman's general statements going to the

23  potential costs and effects.

24  Finally, in failing to address Plaintiff's claims that his diet includes prohibited food

25  items, Defendants cannot demonstrate that the lacto-vegetarian diet served to Plaintiff is the

26  least restrictive means of furthering a compelling interest.  On this limited record, summary

27  judgment will be denied on Plaintiff's RLUIPA claim in Count I.

28

### B.    First Amendment Claim

Defendants do not develop their argument for summary judgment on the First Amendment free exercise claim in Count I, brought under § 1983, except for their assertion that if Plaintiff fails in his RLUIPA claims, his First Amendment challenges automatically fail because of the less stringent test on the constitutional claim (Doc. #158 at 8).  In his response, Plaintiff likewise fails to address his First Amendment claim except to generally allege that the ADC diet violates his free exercise rights (Doc. #163 at 2; Doc. #183 at 1).

The Court has determined that Plaintiff's RLUIPA claim in Count I does not fail at this stage.  In their motion, Defendants do not present any argument as to whether they are entitled to summary judgment on Plaintiff's First Amendment claim in the event that his RLUIPA claim fails.  This scenario mirrors the facts in Greene, where the defendant stated in her motion that she was entitled to summary judgment as a matter of law on the prisoner's § 1983 claim, but she proceeded to argue only the issues of "compelling interest"/"least restrictive means" under RLUIPA.  Greene v. Solano County Jail, --- F.3d ----, 2008 WL 170313, at *6 (9th Cir., Jan. 22, 2008).  The Ninth Circuit reversed the district court's grant of summary judgment on the First Amendment claim in light of this failure to "'either produce evidence negating an essential element' of Greene's § 1983 claim . . . or show that Greene did 'not have enough evidence of an essential element to carry [his] ultimate burden of persuasion at trial.'"  Id. (internal citation omitted).  The Court also held that because the defendant did not set out any grounds for summary judgment on the § 1983 claims in her motion, the *pro se* plaintiff was not put on notice that those claims were in issue and summary judgment was therefore inappropriate.  Id. at *7.

Plaintiff is a *pro se* litigant who was not put on notice as to the First Amendment claims.  He "cannot be expected to anticipate and prospectively oppose arguments that an opposing defendant does not make."  Id. (citing Rand, 154 F.3d at 957).  As in Greene, Defendants have not demonstrated the absence of a material fact that the ADC diet provided to Plaintiff violates his First Amendment rights.  For this reason, summary judgment for Defendants on the First Amendment claim in Count I will be denied.

1      **IV.      Count II—Religious Hair Style**

2              **A.      RLUIPA Claim**

3              **1.      Substantial Burden**

4              The ADC grooming policy, set forth in Department Order (DO) 704.01, provides that:

5              1.1 Hair shall not cover the eyes or ears, and shall be kept clean at all times.

6              1.2 Radical bizarre, carved, double-parted or other types of exotic hairstyles are prohibited.

7

8              1.3 Hair that is long enough to touch the top of the shoulders shall be worn tied back in a ponytail or bun seven days a week.  Inmates may untie ponytails . . .

9              1.4 Inmates may wear their hair braided.

10             • • •

11             1.7.2 State issued ball caps shall be worn with the bill facing forwards at all times . . .

12                     1.7.2.1 Native Americans may wear Native American Headbands.

13                     1.7.2.2 Inmates may wear religious head gear as authorized by the Pastoral Activities Administrator (Doc. #159, DSOF ¶ 33).

14

15     Defendants submit that Plaintiff's religious hairstyle violates § 1.2, which prohibits "radical

16     bizarre, . . . or . . . exotic hairstyles" (id.; Doc. #158 at 3).  They contend that Plaintiff fails

17     to make a *prima facie* case that this ADC grooming policy substantially burdens his religious

18     beliefs (Doc. #158 at 10).   But Defendants do not present any argument or evidence to

       support this contention.  Further, they do not contest that Plaintiff holds a sincere belief that
19
       as a Hare Krishna follower he should wear his sikha religious hairstyle (Doc. #158 at 10).
20
       Any exercise of religion—whether or not compelled by that faith—is covered by RLUIPA.
21
       42 U.S.C. § 2000cc-5(7)(A).   And a grooming policy that either requires a prisoner to
22
       abandon his religious beliefs by cutting his hair or puts significant pressure on him to do so,
23
       imposes a substantial burden on religious practice.  See Warsoldier, 418 F.3d at 994, 996.
24
               Plaintiff has therefore met his burden of showing that Defendants' grooming policy
25
       prohibiting his religious hairstyle is a substantial burden on his religious exercise.  The
26
       burden shifts to Defendants to prove that the imposition of the substantial burden furthers a
27
       compelling interest by the least restrictive means.  42 U.S.C. § 2000cc-2(b).
28

- 12 -

**2.** **Compelling Governmental Interest/Least Restrictive Means**

*a. Parties' Contentions*

Defendants maintain that there exist serious, compelling interests for denying Plaintiff's request to wear his religious hairstyle, including (1) maintaining uniformity among inmates, (2) maintaining good order and discipline, and (3) enforcing security interests that prevent quick inmate identification as a member of a certain group or gang (Doc. #158 at 10). Defendants insist that because these "compelling security interests are specific and well grounded in experience," the Court must apply due deference to the expertise of the prison officials when analyzing Plaintiff's claim (id. at 11).

Defendants rely on the Supreme Court's decision in Cutter, which expressed that any accommodation of religious observances should not override other significant interests and RLUIPA should be applied with due deference to prison officials' experience and expertise. 544 U.S. at 717. The only Ninth Circuit case applying RLUIPA to a prisoner's religious hairstyle request is Warsoldier, which held that the California Department of Corrections' hair grooming policy imposed a substantial burden on the plaintiff's religious practice and was not the least restrictive alternative to achieve a security interest; thus, the policy violated RLUIPA. 418 F.3d at 989. Defendants maintain that Warsoldier failed to analyze and apply the key holdings set forth in Cutter; namely, that a religious accommodation should not be elevated over a prison's need to maintain order and safety and the courts should accord due deference to the expertise of prison officials (Doc. #158 at 11). According to Defendants, had the Ninth Circuit properly considered these requirements when deciding Warsoldier, "the result likely would have been different" (id.). Thus, Defendants suggest that Cutter and the Sixth Circuit decision in Hoevenaar v. Lazarus, 422 F.3d 366 (6th Cir. 2005), should be controlling (id. at 11-12). The plaintiff in Hoevenaar sought a religious hairstyle similar the one Plaintiff requests. There, the Court reversed the issuance of a preliminary injunction that prevented prison officials from cutting the plaintiff's religious hairstyle and held that the district court failed to give proper deference to the expertise and experience of prison officials

1    concerning whether there was a less restrictive means of furthering a compelling security
2    interest.  Hoevenaar, 422 F.3d at 369-72.

3        Defendants submit the declaration of Robert C. Patton, an ADC Administrator V
4    Security Officer, an ADC employee for 22 years (Doc. #159, Ex. B, Patton Decl. ¶¶ 2-3).
5    Patton avers that, based on the totality of his experience, allowing Plaintiff to keep his
6    religious hairstyle would lead to confusion among staff and inmates as to who has an
7    exception to the grooming policy (id. ¶ 12).  He further states that if there was an exception
8    to the policy for Plaintiff, there would be non-uniformity among the inmates that would result
9    in a case-by-case analysis and an increase in the number of requests and lawsuits for hairstyle
10   exceptions.  And this, he states, would disrupt the good order and discipline among inmates
11   at ADC (id. ¶ 13).  Patton explains that there would be "massive requests" for other
12   identifiable hairstyles under the guise of religion, but in reality, for the sole purpose of
13   displaying and identifying gang affiliation (id. ¶¶ 14, 19, 21).  And because some inmates and
14   gangs target other inmates based on religious affiliation, Plaintiff could be in grave risk of
15   attack if he has a unique religious hairstyle (id. ¶¶ 17-18).

16       Plaintiff asserts that gang activity it not an issue because he is confined in the Meadows
17   Unit, which does not house gang members (Doc. #163 at 5; Doc. #166 at 4).  He states that
18   inmates with gang affiliations are housed in Special Management Unit I or II (id.).  Plaintiff
19   suggests that if there was truly a threat to Plaintiff's safety due to his religious hairstyle,
20   Defendants would have segregated Plaintiff rather that keep in him the general prison
21   population where, as he claims, there has been no danger or problems with gang members
22   (Doc. #166 at 4).  Plaintiff also alleges that prison officials have already granted an exception
23   to the grooming policy to an Orthodox Jewish inmate, identified by name and ADC inmate
24   number, who is allowed to wear payots[7] (Doc. #163 at 4; Doc. #166 at 4).

25           **b.  *Analysis***

26       Prison security and safety are compelling governmental interests.  Warsoldier, 418 F.3d
27   at 998.  Thus, the analysis turns on whether a uniform hairstyle policy for all ADC inmates

28

---

[7]Payots or "sidelocks" are long, curled ringlets that fall just in front of the ears.

1  is the least restrictive means available to maintain the security of the prison.

2      Contrary to Defendants' assertion, the Court in Warsoldier did comply with Cutter's
3  directive to consider the evidence and opinions proffered by prison officials.  The Ninth
4  Circuit found that the defendant officials wholly failed to establish that the grooming policy
5  at issue was the least restrictive means of achieving the compelling security interest.  Id. at
6  998-99, 1001.  The Court noted that prison officials presented only conclusory statements and
7  they failed to demonstrate that they ever considered and rejected other less restrictive
8  measures.  Id. at 998-99.

9      The burden of proof under RLUIPA requires more than mere assertions by prison
10 officials that there is no less restrictive means available.  Id. at 1001.  Speculation regarding
11 the possible adverse effects of allowing a religious exception is insufficient to prove that
12 accommodation would compromise the governmental interest at issue; the defendants must
13 present evidence of administrative harm.   See Gonzales v. O Centro Espirita Beneficente
14 Uniao do Vegetal, 546 U.S. 418, 434-36 (2006) (holding that under the compelling interest
15 test of the Restoration of Freedom of Religion Act (RLUIPA's predecessor statute), the
16 government's interest in enforcing the Controlled Substances Act uniformly was insufficient
17 to justify the substantial burden on religious exercise imposed on a small religious group).
18 Indeed, in Cutter the Supreme Court stated that there was no reason to anticipate that
19 accommodations under RLUIPA would cause abusive prisoner litigation that would
20 overburden the prison operations.  Cutter, 544 U.S. at 726.

21     More recently, the Ninth Circuit emphasized that when analyzing a prisoner's RLUIPA
22 claim, prison officials are to be accorded deference with regard to prison security but that the
23 defendants still must show that they have "actually considered and rejected the efficacy of less
24 restrictive measures before adopting the challenged practice." Greene, 2008 WL 170313, at
25 *6 (citing Warsoldier, 418 F.3d at 999).  The Court explained that "in light of RLUIPA, no
26 longer can prison officials justify restrictions on religious exercise by simply citing to the need
27 to maintain order and security in a prison.  RLUIPA requires more." Greene, 2008 WL
28 170313, at *6.  Further, unlike the traditional summary judgment burden application, here,

1   *Defendants* bear the burden of persuasion at trial to prove that the imposition of a burden is

2   the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. §

3   2000cc-2(b).  When the party moving for summary judgment will also have the burden of

4   proof at trial, "to prevail on summary judgment it must show that 'the evidence is so powerful

5   that no reasonable jury would be free to disbelieve it.'"  Shakur, 2008 WL 185496, at *8

6   (citing 11-56 Moore's Federal Practice-Civil § 56.13); see Oshilaja v. Watterson, CV 05-

7   3429-PHX-RCB, 2007 WL 2903029, at *9 (D. Ariz., Sept. 30, 2007) ("when the moving

8   party will have the burden of proof at trial, . . . their showing must be sufficient for the court

9   to hold that no reasonable trier of fact could find other than for the moving party") (internal

10  citation omitted); compare Celotex, 477 U.S. at 323 (directing summary judgment for the

11  moving party when the nonmoving party fails to make a sufficient showing on an essential

12  element of his case with respect to which he has the burden of proof at trial).

13       Defendants have failed to meet this burden.  Their concerns over the consequences of

14  Plaintiff's religious hairstyle are conclusory, speculative, and unsupported.  Despite Plaintiff

15  having worn his religious hairstyle for over a year (see Doc. #97, Order granting Motion for

16  Preliminary Injunction, Oct. 5, 2006), Defendants present no evidence that there has been a

17  single other request—much less "massive requests"—for a religious hairstyle.  Nor is there

18  proof of any lawsuits filed concerning religious hairstyles.  Also, there is nothing to

19  demonstrate that Plaintiff has been in danger or even threatened since he began wearing the

20  sikha.

21       Although Defendants claim that maintaining uniformity among inmates concerning

22  hairstyles is a serious compelling interest, the ADC grooming policy allows inmates to wear

23  short hair or long hair, braided hair, ball caps and authorized religious head gear, and Native

24  Americans may wear headbands (Doc. #159, DSOF ¶ 33, DO § 704.01).  As suggested in

25  Plaintiff's response, this variety of hairstyle and head gear options undermines the argument

26  that uniform hairstyles are a security imperative (see Doc. #163 at 4-5).

27       More importantly, Defendants do not refute Plaintiff's contention that gang activity is

28  not a factor in his housing unit nor do they challenge Plaintiff's assertion that prison officials

1    have already granted a grooming policy exception to an Orthodox Jewish inmate.  Thus,

2    Plaintiff disputes Defendants' claims that his safety is at risk and that the grooming policy

3    requires uniform enforcement.  These disputed issues distinguish this case from <u>Hoevenaar</u>,

4    where the plaintiff did not rebut the defendant prison official's expert testimony.  <u>See</u>

5    <u>Hoenenaar</u>, 422 F.3d at 372.

6         On this record, there is a genuine issue of material fact whether there is no less

7    restrictive means of maintaining security other than the current uniform grooming policy.

8    Defendants are not entitled to summary judgment on the RLUIPA claim in Count II.

9         The Court notes that <u>Warsoldier</u>—which is precedent here despite other contrary

10   circuit court opinions—applied to the facts in Count II, may provide a basis on which Plaintiff

11   may be entitled to summary judgment.  Therefore, a new dispositive motions deadline will be

12   set allowing for both Plaintiff and Defendants to refile summary judgment motions.

13        **B.     First Amendment Claim**

14        The Court will deny summary judgment to Defendants on the First Amendment claim

15   in Count II for the same reasons as set forth above in the First Amendment analysis for

16   Count I.

17   **IV.   Count III—Religious Visits/Services**

18        **A.     RLUIPA Claim**

19             **1. Parties' Contentions**

20        Defendants contend that Plaintiff cannot demonstrate a *prima facie* case that his

21   religious exercise was substantially burdened by Defendants' failure to provide a Hare

22   Krishna visitor (Doc. #158 at 13).  They argue that their extended efforts to set up a religious

23   visit and the limited resources at the prison prohibit any finding of a substantial burden on

24   Plaintiff's religious exercise.

25        The ADC Senior Chaplain, Henderson, states that inmates may request religious

26   visitation by submitting the proper paperwork, including forms to be completed by the

27   requested visitor (Doc. #159, Ex. C, Henderson Decl. ¶ 9).  Henderson confirms that in April

28   2006, Plaintiff and his requested visitor, Mr. Larson from the ISKCON Prison Ministry,

1    completed the requisite paperwork and visitation was approved (id. ¶ 10).  According to

2    Henderson, Larson failed to respond to the ADC letter notifying him of the approval and

3    instructing him how to set up a religious visit at the prison (id. ¶ 11; Ex. J).  Henderson states

4    that after Plaintiff inquired about Larson's pending visit, Henderson left three phone messages

5    for Larson in early August but Larson did not return his calls (id. ¶¶ 11-15; Ex. H).  Plaintiff

6    subsequently completed paperwork to request another religious visitor, Heather Honey.

7    Honey's paperwork has not yet been returned to the ADC for approval (id. ¶ 17; Ex. M).

8          As to religious services for prisoners, Linderman explained that the ADC organizes

9    services for particular religions only when a sufficient number of practitioners within a unit

10   request a service and when a volunteer sponsorship is available (Doc. #159, Ex. A, Linderman

11   Decl. ¶ 17).  The ADC policy governing group worship provides that:

12         Regular worship/study opportunities shall be provided for faith groups
           according to inmate requests, space/time considerations of the monthly
13         religious services calendar; safety and security requirements of the institution;
           and the availability of a qualified religious leadership (Doc. #159, Ex. A,
14         Linderman Decl. ¶ 23).

15   Linderman states that because Plaintiff is the only Hare Krishna in his unit, no services are

16   scheduled (id. ¶ 24).  He avers that limited resources at the ADC prevent services in units

17   that have only one practitioner for a particular faith (id.).  The ADC records show that there

18   are only three other inmates within ADC with the religious designation of Hare Krishna and

19   none of those three are housed in the Meadows Unit with Plaintiff (id. ¶ 18).

20         Plaintiff argues that he simply wants to attend religious services "just like all the other

21   religious faith" and he requests to use an empty visitation room or class room for his

22   religious services (Doc. #163 at 5).  He concedes that he has had difficulty setting up a

23   religious visit, but reasserts that the prison should nonetheless provide religious services just

24   as they do for inmates of the Jewish tradition (Doc. #166 at 3-4).

25                **2.  Analysis**

26         Plaintiff has failed to establish that Defendants have substantially burdened his

27   religious exercise.  Under RLUIPA, "[n]o government shall impose a substantial burden on

28   the religious exercise of a person . . .  even if the burden results from a rule of general

1    applicability . . . " 42 U.S.C. 2000cc-1(a).  "'[A] substantial burden' on 'religious exercise'

2    must impose a significantly great restriction or onus upon such exercise." Warsoldier, 418

3    F.3d at 995 (citation omitted).  An inmate's religious exercise is substantially burdened

4    "'where the state . . . denies [an important benefit] because of conduct mandated by religious

5    belief . . . '" Id.

6            The undisputed facts demonstrate that Defendants have worked with Plaintiff to set

7    up religious visits with members from ISKCON Prison Ministry.  There is no evidence of a

8    policy or an action or omission on the part of Defendants that prevented Mr. Larson or Ms.

9    Honey from visiting Plaintiff.  See Murphy v. Mo. Dep't of Corrs., 372 F.3d 979, 988 (8th

10   Cir. 2004) (defining "substantial burden" as a government policy or action that "significantly

11   inhibit[s]" religious conduct or expression).  With respect to religious visitation, Plaintiff

12   does not demonstrate a substantial burden on his religious activity.

13           Nor does he demonstrate a substantial burden concerning religious services.  The

14   Ninth Circuit has held that a policy that prohibits a prisoner from attending group religious

15   services constitutes a substantial burden on religious exercise.  Greene, 2008 WL 170313,

16   at *5.  In Greene, the plaintiff alleged that the jail's policy banning religious services for all

17   maximum security prisoners violated RLUIPA.  Id.  But Greene is not analogous to the

18   present action because Plaintiff does not dispute that he is the only Hare Krishna in his unit

19   and that any worship with another member of his religious sect would require a transfer of

20   prisoners to his unit (Doc. #163 at 6).  Thus, it is not a policy of the Defendants that is a

21   substantial burden on Plaintiff's ability to worship with others.  The Defendants' policy

22   allows group worship.  Rather, it is the absence of any other Hare Krishna in his unit or who

23   is willing to visit him.  Plaintiff cites no authority that RLUIPA requires transport of

24   prisoners from other institutions in the state to create a religious community where none

25   exists.  There is no evidence that Defendants are imposing a restriction or that they are

26   denying a benefit.  Absent a community of at least two, there is no group worship that the

27   Defendants could  substantially burden within the meaning of RLUIPA.

28

1    Because Plaintiff has failed to meet his burden to establish a *prima facie* claim that
2    Defendants' policies or actions constituted a substantial burden, Defendants' request for
3    summary judgment on the RLUIPA claim in Count III will be granted.

4              **B.     First Amendment Claim**

5          Although the Court finds that Defendants are entitled to judgment as a matter of law
6    on the RLUIPA claim in Count III, summary judgment cannot be extended to the First
7    Amendment claim in Count III.  Again, Defendants did not present any argument or evidence
8    suggesting that Plaintiff did not carry his burden on this particular claim, and Plaintiff was
9    not put on notice that the sufficiency of his constitutional claim was in issue.  See Greene,
10   2008 WL 170313, at *6-7.

11   **V.    Qualified Immunity**

12         Defendants' final argument is that they are entitled to qualified immunity for all three
13   counts.  Plaintiff did not respond to Defendants' qualified immunity argument.  A defendant
14   in a § 1983 action is entitled to qualified immunity from damages for civil liability if his
15   conduct does not violate clearly established statutory or constitutional rights of which a
16   reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

17         Claims for declaratory or injunctive relief are unaffected by qualified immunity.  Los
18   Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993).  In his First
19   Amended Complaint, Plaintiff requested declaratory and injunctive relief, court costs and
20   "anything that the Court find[s] for pain and suff[er]ing to the Plaintiff" (Doc. #7 at 7).
21   Defendants' qualified immunity argument applies only to the extent that Plaintiff seeks
22   damages for pain and suffering for violations of his remaining RLUIPA claims in Counts I
23   and II (see Doc. #158 at 14-15, limiting qualified immunity argument to Plaintiff's RLUIPA
24   claims).

25          If a defendant claims qualified immunity, the court must make two distinct inquires,
26   the "constitutional inquiry" and the "qualified immunity inquiry."  See Estate of Ford v.
27   Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).  The "constitutional inquiry" asks
28   whether, when taken in the light most favorable to the non-moving party, the facts alleged

1   show that the official's conduct violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S.

2   194, 201 (2001).  If so, a court turns to the "qualified immunity inquiry" and asks if the right

3   was clearly established at the relevant time.  <u>Id.</u> at 201-02.  This second inquiry "must be

4   undertaken in light of the specific context of the case, not as a broad general proposition."

5   <u>Id.</u> at 201.

6          As discussed *supra*, the Court has determined that disputed facts, viewed in the light

7   most favorable to Plaintiff, create a triable issue of fact regarding whether Defendants

8   violated Plaintiff's rights under RLUIPA in Counts I and II.  The second step of the <u>Saucier</u>

9   analysis looks at whether the rights to a Hare Krishna diet and a sikha religious hairstyle

10  were clearly established statutory law.

11         Defendants contend that the law was not clearly established concerning the RLUIPA

12  claims set forth by Plaintiff (Doc. #158 at 14).  A right is clearly established if its contours

13  are "sufficiently clear that a reasonable official would understand that what he is doing

14  violates that right."  <u>Kennedy v. City of Ridgefield</u>, 439 F.3d 1055, 1065 (9th Cir. 2006)

15  (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)).  It is not necessary that there be a prior

16  case with the identical facts showing that a right is clearly established, it is enough that there

17  is preexisting law that provides a defendant "fair warning" that his conduct was unlawful.

18  <u>Kennedy</u>, 439 F.3d at 1065.

19         RLUIPA became effective in September 2000.  42 U.S.C. § 2000cc.  The two recent

20  2008 Ninth Circuit cases discussed above, <u>Greene</u> and <u>Shakur,</u> establish that Defendants'

21  alleged conduct in Counts I and II may violate RLUIPA.  And arguably, <u>Warsoldier</u> provided

22  sufficient notice to Defendants that their actions may be unlawful.  <u>See</u>  <u>Warsoldier</u>, 418 F.3d

23  989 (filed July 29, 2005).  These cases, however, postdate the accrual of Plaintiff's claims

24  (<u>see</u> Doc. #1, Complaint filed July 28, 2005).[8]

25

26  ───────────────
    [8]Plaintiff implied in his response memorandum that his claims arose in 2003 (Doc.
27  #163 at 2, "on or about 2003 . . . Plaintiff formally grieved the blatant and continuous
    violations of his protected religious right[s] by Defendants . . . ").  Because his allegations
28  go to continuing violations, the Court will refer to the filing date for the qualified immunity
    analysis.

1     In two unpublished opinions, the Ninth Circuit determined that in 2001 and 2002 it

2 was not yet clearly established that prison grooming regulations—one requiring short hair

3 and the other prohibiting beards—with no religious exceptions, violated RLUIPA. Haley v.

4 Donovan, 2007 WL 2827478 (9th Cir. Sept. 27, 2007); Von Staich v. Hamlet, 2007 WL

5 3001726, at *2 (9th Cir. Oct. 16, 2007).[9]   In both cases, the Court affirmed grants of

6 summary judgment for the defendants on qualified immunity grounds. Id.

7     Prior to Warsoldier, there appears to be no Ninth Circuit case law directly addressing

8 religious meals and hairstyles under RLUIPA.  Indeed, the Court acknowledged in that

9 opinion that "[t]here exists little Ninth Circuit authority construing RLUIPA." Warsoldier,

10 418 F.3d at 997 n. 7.  "If the occasion has not risen for our circuit to reach a question, we

11 may draw clearly established law from other circuits." Hydrick v. Hunter, 500 F.3d 978, 989

12 (9th Cir. 2007).  The Court is hard-pressed to find any circuit cases prior to 2005 on the

13 application of RLUIPA to claims about religious meals to prisoners.

14     Among district courts, there is a 2004 case out of the Eastern District of California

15 that held prison grooming regulations violated RLUIPA because they imposed penalties on

16 prisoners who refused to shave their beards for religious reasons. Mayweathers v. Terhune,

17 328 F.Supp.2d 1086 (E.D. Cal. 2004).

18     The Court finds that there is limited pre-2005 case law establishing when prison

19 officials' actions and policies regarding religious hairstyles violated federal law. The district

20 court case is insufficient on its own to have put Defendants on notice that their actions may

21 have been unlawful.  And there is virtually no prior case law addressing religious diet claims

22 under RLUIPA.  Thus, at the time Plaintiff's claims arose, there was no agreement among

23 various courts that certain conduct "not distinguishable in a fair way from the facts presented

24 in the case at hand," violated statutory law. See Saucier, 533 U.S. at 202.  Defendants are

25 therefore entitled to qualified immunity on the RLUIPA claims for damages set forth in

26 Counts I and II.

27

28     [9]See Fed. R. App. P. 32.1, which allows for citation of federal cases that have been designated as "unpublished" and issued on or after January 1, 2007.

- 22 -

1    Defendants present no argument regarding qualified immunity for any of the First

2    Amendment free exercise claims or the Fourteenth Amendment equal protections claims.

3    **VI.    Conclusion**

4    At the summary judgment stage, the determination of whether a factual dispute exists

5    is "guided by the substantive evidentiary standards that apply to the case." Anderson, 477

6    U.S. at 255.  The recent Greene and Shakur decisions, discussed in this Order, interpret the

7    applicable evidentiary standards in prisoner RLUIPA claims.  Unfortunately, the parties did

8    not have the benefit of this case law during summary judgment briefing.  Therefore, except

9    for the RLUIPA claim in Count III and the qualified immunity claims addressed above,

10   Defendants' motion will be denied without prejudice.  A new dispositive motions deadline

11   will be set allowing for both parties to refile summary judgment motions.

12   In sum, Defendants' motion will be granted only as to their request for summary

13   judgment on the RLUIPA claim in Count III and for qualified immunity on the RLUIPA

14   damages claims in Counts I and II.  The motion will be denied as to the RLUIPA claims for

15   declaratory and injunctive relief in Counts I and II.  And, because the motion did not address

16   any claims brought under the First or Fourteenth Amendments, the motion is denied as to

17   those claims within each count.

18

19   **IT IS THEREFORE ORDERED:**

20   (1) Defendants' Motion for Summary Judgment (Doc. #158) is **granted** in part and

21   **denied** in part as follows:

22        (a) the motion is **granted** on the RLUIPA claim in Count III;

23        (b) the motion is **granted** on qualified immunity grounds for Defendants as to

24        the RLUIPA claims for damages in Counts I and II;

25        (c) the motion is otherwise **denied** without prejudice.

26   (2) Plaintiff's Motion for Dismissal (Doc. #163) is **denied** as procedurally improper.

27   (3) In light of this Order, a new dispositive motions deadline will be set for April 11,

28   2008.

1       (4) If no dispositive motions are pending, the parties shall submit a joint proposed

2  pretrial order by April 18, 2008.  If dispositive motions are pending, the deadline for filing

3  the joint proposed pretrial order shall be 30 days following resolution of the dispositive

4  motions.

5       (5) In light of the age of this case, the Court does not contemplate extending the

6  deadlines set in this order.

7       DATED this 25th day of February, 2008.

 

                                    Neil V. Wake

                        United States District Judge